PRESENT:  All the Justices

RICHARD MATHEWS, ET AL.
                                              OPINION BY
v.    Record No. 110967            JUSTICE WILLIAM C. MIMS
                                          April 20, 2012
PHH MORTGAGE CORPORATION

            FROM THE CIRCUIT COURT OF NELSON COUNTY
                     J. Michael Gamble, Judge

     In this appeal, we consider whether a landowner who has

breached a deed of trust by failing to make payments as

required under the associated note may nevertheless enforce its

conditions precedent.  We also consider the prerequisites to

foreclosure set forth in 24 C.F.R. § 203.604 and whether they

are incorporated as conditions precedent in a deed of trust.

     I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     Richard M. and Karin L. Mathews owned a parcel of land in

Nelson County ("the Parcel"), which they conveyed by deed of

trust ("the Deed of Trust") on June 28, 2002, to Wendall L.

Winn, Jr., trustee, for the benefit of University of Virginia

Community Credit Union to secure a note in the principal amount

of $118,505.00, plus interest ("the Note").  The indebtedness

secured by the Deed of Trust was insured by the Federal Housing

Authority under regulations promulgated by the Secretary of

Housing and Urban Development ("HUD") under the National

Housing Act, 12 U.S.C. §§ 1701-1750jj, and codified in Part 203

of Title 24 of the Code of Federal Regulations.  PHH Mortgage

1

Corporation ("PHH") subsequently became the holder of the Note and the beneficiary of the Deed of Trust.

The Mathewses fell into arrears on the payments due under the Note. Consequently, PHH appointed Professional Foreclosure Corporation of Virginia ("PFC") as substitute trustee under the Deed of Trust to commence foreclosure proceedings on the Parcel. PFC scheduled a foreclosure sale for November 11, 2009.

On November 10, 2009, the Mathewses filed a complaint in the circuit court seeking a declaratory judgment that the foreclosure sale would be void because PHH had not satisfied conditions precedent to foreclosure set forth in the Deed of Trust. Specifically, they alleged that 24 C.F.R. § 203.604 ("the Regulation") required PHH to have a face-to-face meeting with them at least 30 days before the commencement of foreclosure proceedings. They asserted that the Regulation was incorporated into the Deed of Trust as a condition precedent to foreclosure. No such meeting had occurred before PFC commenced foreclosure proceedings.

PHH removed the action to the United States District Court for the Western District of Virginia, which remanded it to the circuit court for lack of subject-matter jurisdiction. PHH then filed a demurrer in which it argued that the Mathewses could not sue to enforce the Regulation because (a) it

2

conferred no private right of action and (b) they had committed the first breach of the Deed of Trust by failing to pay as required under the Note. PHH also argued that, even if the Mathewses could sue to enforce the Regulation, it did not apply to them because, under HUD's interpretation, a face-to-face meeting is only required if the mortgagee has a "servicing office" within 200 miles of the mortgaged property. PHH did not have such an office within that distance from the Parcel.

The circuit court ruled that the Regulation was incorporated into the Deed of Trust as a condition precedent to foreclosure. However, the court also determined that under Virginia common law, the party who breaches a contract first cannot sue to enforce it. The court therefore ruled that the Mathewses could not sue to enforce the conditions precedent in the Deed of Trust because they had breached it first through non-payment. The court also ruled that the Regulation did not apply to them because PHH did not have a "servicing office" within 200 miles of the Parcel. Accordingly, the court sustained PHH's demurrer and dismissed the complaint. We awarded the Mathewses this appeal.

## II. ANALYSIS

### A. ENFORCEMENT OF CONDITIONS PRECEDENT TO FORECLOSURE IN A DEED OF TRUST BY A BORROWER IN DEFAULT

The threshold question is whether the Mathewses' failure to pay under the Note precludes them from enforcing the

3

conditions precedent to foreclosure in the Deed of Trust. If so, the questions of whether the Regulation applies and whether it is incorporated into the Deed of Trust are moot.

In Horton v. Horton, 254 Va. 111, 115-16, 487 S.E.2d 200, 203-04 (1997), we acknowledged that as a matter of Virginia common law,

> a party who commits the first breach of a contract is not entitled to enforce the contract. An exception to this rule arises when the breach did not go to the "root of the contract" but only to a minor part of the consideration.
>      If the first breaching party committed a material breach, however, that party cannot enforce the contract. A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract. If the initial breach is material, the other party to the contract is excused from performing his contractual obligations.

(Internal citations omitted.) We echoed this statement in Countryside Orthopaedics, P.C. v. Peyton, 261 Va. 142, 154, 541 S.E.2d 279, 285 (2001), and reiterated that "the first party to commit a material breach [of a contract cannot] maintain an action on it." Id. at 156, 541 S.E.2d at 287 (citing Hurley v. Bennett, 163 Va. 241, 253, 176 S.E. 171, 175 (1934)).

Nevertheless, the Mathewses argue that under Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114, 654 S.E.2d 898 (2008), a lender must comply with all conditions precedent to

4

foreclosure in a deed of trust even if the borrowers are in arrears.  We agree.

In Bayview, the borrower was in arrears.  Consequently, the lender accelerated repayment under the note and directed the trustee under the deed of trust to begin foreclosure proceedings.  Thereafter, the parcel was sold at a foreclosure auction and the borrower filed a suit for damages alleging breach of the deed of trust.  Id. at 117-18, 654 S.E.2d at 899.  We determined that the sale was improper because Bayview had failed to provide a pre-acceleration notice, which was a condition precedent to acceleration under the deed of trust.  By failing to provide the notice, Bayview breached the deed of trust by accelerating repayment and foreclosing:

> Because Bayview did not comply with the specific condition precedent under the Deed of Trust, prior to the notice of foreclosure sale by [the trustee], Bayview had not acquired the right to accelerate payment under the terms of the Deed of Trust.  Thus, [the trustee] could exercise no right of acceleration because no such right had then accrued to Bayview. . . .
> While Code § 55-59.1(A) does allow a proper notice of foreclosure sale to exercise an accrued right of acceleration, Bayview failed to fulfill the contractual condition precedent that would have given it such a right.

Id. at 121-22, 654 S.E.2d at 901 (emphasis added).

Accordingly, we affirmed the circuit court's judgment in favor of the borrower.  Id. at 122, 654 S.E.2d at 902.

5

A trustee's power to foreclose is conferred by the deed of trust. Fairfax County Redevelopment & Hous. Auth. v. Riekse, 281 Va. 441, 445-46, 707 S.E.2d 826, 829 (2011). That power does not accrue until its conditions precedent have been fulfilled. See Bayview, 275 Va. at 121, 654 S.E.2d at 901. The fact that a borrower is in arrears does not allow the trustee to circumvent the conditions precedent. However, if the general rule of contract enforcement enunciated in Horton and Countryside Orthopaedics applied to deeds of trust, a trustee could not be held accountable for exercising his latent power to foreclose before it actually had accrued, for two reasons. First, the borrower is the only party with standing to bring an action, whether for damages after the fact of the improper sale or to bar the improper sale in equity before it occurs.[1] Second, the paramount prerequisite to foreclosure is some breach of the deed of trust by the borrower – a trustee under a deed of trust cannot commence foreclosure proceedings on the parcel of a borrower who has not first breached the deed of

_____

[1] Bayview illustrates the principle that damages may be awarded at law after a foreclosure sale has been conducted improperly because the power of foreclosure has not accrued. Equitable relief is available to enjoin the improper sale before it occurs as well. See Rossett v. Fisher, 52 Va. (11 Gratt.) 492, 499 (1854) (stating that a debtor may resort to equity to ensure that a trustee under a deed of trust fulfills his duties under the deed of trust); see also 19 Michie's Jurisprudence, Trusts and Trustees § 120 ("Equity . . . could interfere by injunction to restrain [a trustee] from improperly exercising his powers.").

trust in some way.  The conditions precedent in the deed of trust which govern the accrual of his latent power to foreclose are irrelevant before such a breach.

Therefore, prohibiting the borrower who has breached from bringing an action to enforce the conditions precedent in a deed of trust would nullify such conditions.  The mere fact of the borrower's breach alone would become, de facto, the only condition precedent to foreclosure.

Addressing this concern at oral argument, PHH contended that failure to pay under the note was only one of several possible breaches of a deed of trust.  Because other breaches might "not go to the 'root of the contract' but only to a minor part of the consideration," PHH continued, they would fall into the exception recognized in Horton.  254 Va. at 115, 487 S.E.2d at 203.  Therefore, according to PHH, such a borrower could still sue to enforce the deed of trust and its conditions precedent to foreclosure would not be nullified.

We accept the validity of PHH's premise and recognize that a deed of trust may anticipate breaches other than by non-payment that could enable the trustee to commence foreclosure proceedings.  Yet non-payment under the note is the principal reason for foreclosure.  Regardless of whether a deed of trust may permit foreclosure when the borrower breaches other than by non-payment, and acknowledging that such breaches may not be

7

material and therefore may not bar the borrower's suit to enforce the deed of trust under Horton, we observe that deeds of trust universally anticipate breach by non-payment. Thus, to accept PHH's argument, we would have to rule that conditions precedent to foreclosure in deeds of trusts are nullities when the breach is by non-payment – the vast majority of cases – but that such conditions are fully enforceable in the rare cases when the breach is not by non-payment. Such a ruling would defy common sense.

The solution lies in the definition of material breach. In Horton and Countryside Orthopaedics, we defined material breach as "a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." Countryside Orthopaedics, 261 Va. at 154, 541 S.E.2d at 285 (quoting Horton, 254 Va. at 115, 487 S.E.2d at 204). The essential purposes of a deed of trust are two-fold: to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes. Because a deed of trust permits the trustee to sell the parcel to protect the interest of the lender-beneficiary upon the borrower's breach by non-payment, the fact of non-payment of the note does not

8

"defeat[] an essential purpose of the contract." Id. To the contrary, lenders require deeds of trust precisely because they contemplate the possibility of non-payment. In other words, by its nature, the deed of trust is a contract in which the parties have agreed that material breach of the note by non-payment will not deprive borrowers of their rights to enforce the conditions precedent. Accordingly, non-payment of a note is not a material breach of a deed of trust within the meaning of Horton and Countryside Orthopaedics.[2]

We therefore reject PHH's argument. Borrowers may sue to enforce conditions precedent to foreclosure even if they were the first party to breach the note secured by a deed of trust through non-payment.

### B. INCORPORATION OF THE REGULATION AS A CONDITION PRECEDENT TO FORECLOSURE UNDER THE DEED OF TRUST

We now turn to the question of whether the Regulation is incorporated into the Deed of Trust as a condition precedent to foreclosure. The circuit court determined that the Regulation was incorporated and PHH has assigned cross-error to this ruling. PHH first argues that terms may be incorporated into a contract by reference only if the intent to incorporate is clear. PHH asserts that the language of the Deed of Trust does

---

[2] While the Note is not in the record of this case and this precise issue is not presently before us, we observe that non-payment may be a material breach of a note, which may enable a lender to bring an action on it independent of the deed of trust.

not clearly express intent to incorporate HUD's regulations. We disagree.

A deed of trust is construed as a contract under Virginia law, see, e.g., Virginia Hous. Dev. Auth. v. Fox Run Ltd. P'shp., 255 Va. 356, 365, 497 S.E.2d 747, 753 (1998), and we "consider the words of [a] contract within the four corners of the instrument itself." Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010) (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)). It

> is construed as written, without adding terms
> that were not included by the parties. When the
> terms in a contract are clear and unambiguous,
> the contract is construed according to its plain
> meaning. Words that the parties used are
> normally given their usual, ordinary, and
> popular meaning. No word or clause in the
> contract will be treated as meaningless if a
> reasonable meaning can be given to it, and there
> is a presumption that the parties have not used
> words needlessly.

Id. (quoting PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358, 626 S.E.2d 369, 372-73 (2006)).

Paragraph 18 of the Deed of Trust sets forth the procedure for foreclosure. It states in relevant part that the power of sale may be invoked only after the lender "requires immediate payment in full under paragraph 9." In other words, acceleration of repayment is a condition precedent to

10

foreclosure.  Paragraph 9 sets forth the "Grounds for

Acceleration of Debt," which includes payment default:

> (a) Default.  Lender may, <u>except as limited by regulations issued by the Secretary</u>, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>> (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment . . . .

(Emphasis added.)  Paragraph 9 also includes the following

subparagraph:

> (d) Regulations of HUD Secretary.  In many circumstances <u>regulations issued by the Secretary will limit [the l]ender's rights</u>, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  <u>This Security Instrument does not authorize acceleration or foreclosure if not permitted by the regulations of the Secretary</u>.

(Emphasis added.)

These words "are clear and unambiguous" and we will

construe them according to their plain meaning.  <u>Uniwest

Constr.</u>, 280 Va. at 440, 699 S.E.2d at 229.  They express the

intent of the parties that the rights of acceleration and

foreclosure do not accrue under the Deed of Trust unless

permitted by HUD's regulations.  We cannot conceive of any

other purpose for which they would have been included.

Therefore, the Deed of Trust expressly withholds authorization

to accelerate or foreclose if the Regulation does not permit

PHH to do so.  Any other interpretation would render these

11

provisions meaningless.  We will not adopt such an interpretation.  Id.

Accordingly, the references to HUD's regulations in the Deed of Trust are sufficient to incorporate them insofar as they prevent the borrower from accelerating or foreclosing. Cf. High Knob Assocs. v. Douglas, 249 Va. 478, 488, 457 S.E.2d 349, 354-55 (1995) (ruling that language by which a party merely acknowledges that he has received, read, and understands an otherwise extrinsic document prior to executing a contract is sufficient to incorporate the document into the contract); Marriott v. Harris, 235 Va. 199, 214, 368 S.E.2d 225, 232 (1988) (same).

PHH next argues that terms may be incorporated into a contract by reference only if it is clear which terms are to be incorporated.  PHH asserts that any language in the Deed of Trust appearing to incorporate HUD's regulations fails to state explicitly which regulations are intended to be incorporated. Part 203 of Title 24 of the Code of Federal Regulations contains 681 regulations, PHH observes, and the Deed of Trust fails to identify which of them are incorporated.  We again disagree.

Only those regulations that prevent a lender from accelerating or foreclosing are incorporated by the cited language in the Deed of Trust.  Whether every regulation

included in Part 203 of Title 24 does so is not before us. We must determine only whether the Regulation invoked in this case prevents a lender from accelerating or foreclosing. For two reasons, we conclude that it does, and therefore that it is incorporated into the Deed of Trust as a condition precedent.

First, 24 C.F.R. § 203.606(a) requires that "[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met." (Emphasis added.) 24 C.F.R. § 203.606(a) is codified in Subpart C of Part 203, which is captioned "Servicing Responsibilities." The first section in Subpart C is 24 C.F.R. § 203.500, which further states that "[i]t is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed." (Emphasis added.)

Second, 24 C.F.R. § 203.606(a) directs that "[t]he mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account." Id.[3] Therefore, while none of the pleadings set forth the amount or duration of the Mathewses' arrearage at the

_____

[3] 24 C.F.R. § 203.606(b) provides exceptions to the delay in commencing foreclosure imposed by subsection (a) but PHH does not assert that any of them apply.

13

time PHH instructed PFC to commence foreclosure proceedings on the Parcel, PHH could not have instructed PFC to do so unless they were in arrears for at least three full monthly installments.

In addition, the Regulation itself provides that "[t]he mortgagee <u>must</u> have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, <u>before three full monthly installments due on the mortgage are unpaid</u>."  24 C.F.R. § 203.604(b) (emphasis added).[4] The Regulation is codified in Subpart C and therefore is a servicing requirement that PHH must meet "<u>[b]efore initiating foreclosure</u>."  24 C.F.R. § 203.606(a) (emphasis added).

Accordingly, the face-to-face meeting requirement is a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into the Deed of Trust.  Cf. <u>Manufacturers Hanover Mortgage Corp. v. Snell</u>, 370 N.W.2d 401, 404 (Mich. Ct. App. 1985) (suggesting that HUD's servicing requirement regulations may be a defense to foreclosure if they are made terms of a mortgage contract).

PHH also argues that the language in the Deed of Trust should not be construed to incorporate the Regulation because the language was not bargained for by the parties; rather, it

---

[4] Certain exceptions set forth in 24 C.F.R. § 203.604(c) apply to this requirement and we will consider them below.

14

is language imposed by HUD, which requires the use of a standardized form deed of trust.  We again disagree.

As noted above, the lender-beneficiary and trustee under a deed of trust have only those powers that it confers upon them. Riekse, 281 Va. at 445-46, 707 S.E.2d at 829 (2011).  As a matter of Virginia law, when a deed of trust expressly states on its face that it "does not authorize acceleration or foreclosure if not permitted by" some external set of conditions identified within the deed of trust, those conditions are fully incorporated as conditions precedent to acceleration and foreclosure.  HUD requires this language to be incorporated into deeds of trust which secure its federally insured loans.  24 C.F.R. § 203.17(a).  Doing so makes its regulations enforceable by borrowers as conditions precedent to acceleration and foreclosure as through a state-law action for breach of contract.  This is entirely consistent with the intention expressed in 24 C.F.R. §§ 203.500 and 203.606(a).

Conversely, PHH offers no explanation for HUD's decision to require this language in deeds of trust which secure its insured loans if, as PHH contends, the regulations govern only the relationship between the lender and the government, rather than the lender and the borrower.  The regulations themselves govern the relationship between the lender and the government; there is no reason to refer to them in the deed of trust other

15

than to affect the duties of the parties to it. If, as PHH asserts, HUD has a contrary intention, it may either (a) cease to require or allow language that incorporates its regulations as conditions precedent to acceleration or foreclosure in the deeds of trust or (b) require or allow language that expressly states its intent that its regulations are not conditions precedent. It has done neither.

In conclusion, the terms used in Paragraphs 9 and 18 of the Deed of Trust clearly state that the rights of acceleration and foreclosure accrue only if permitted by HUD's regulations. 24 C.F.R. §§ 203.500 and 203.606(a) clearly express HUD's intent that foreclosure proceedings are not permitted unless the lender has complied with the Regulation. The Regulation therefore is incorporated as a condition precedent in the Deed of Trust.

## C. APPLICABILITY OF 24 C.F.R. § 203.604

The final issue is whether the Regulation applies in this case. As noted above, the Regulation requires the lender to "have a face-to-face interview" with the borrower, "or make a reasonable effort to arrange such a meeting." 24 C.F.R. § 203.604(b). However, it also states that "[a] face-to-face meeting is not required if . . . [t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either." 24 C.F.R. § 203.604(c).

16

In its demurrer, PHH cited a frequently-asked-questions webpage ("the FAQ") on the HUD website in which HUD purportedly interpreted the term "branch office" as used in 24 C.F.R. § 203.604(c) to mean only a "servicing office." The relevant portion of the webpage responds to the question, "Please clarify HUD's requirement to conduct a face-to-face meeting with a delinquent mortgagor. This is often impossible as many mortgagees maintain only one centralized servicing office." U.S. Department of Housing and Urban Development, General Servicing Frequently Asked Questions, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing /sfh/nsc/faqgnsrv (last visited Mar. 12, 2012). HUD replied,

> The Department is aware that many Mortgagees maintain "branch offices" that deal only with loan origination and some of these offices may only be staffed part-time. For the most part, individuals that staff an origination office are not familiar with servicing issues and are not trained in debt collection or HUD's Loss Mitigation Program.
> The Department has always considered that the face-to-face meeting must be conducted by staff that is adequately trained to discuss the delinquency and the appropriate loss mitigation options with the mortgagor. Therefore, for the purpose of this discussion, the face-to-face meeting requirement referenced in [the Regulation] relates only to those mortgagors living within a 200-mile radius of a servicing office.

Id.

PHH asserted that it did not have a "servicing office" within 200 miles of the Parcel and that the face-to-face

17

meeting requirement therefore did not apply. The circuit court accepted this argument and the Mathewses assign error to its ruling.

The Mathewses argue the term "branch office" is unambiguous and that the plain language of the Regulation supersedes HUD's response in the FAQ. They assert that the common and popular meaning of a "branch office" is "a place for the regular transaction of business or performance of a particular service located at a different location from the business's main office or headquarters." Moreover, HUD expressly acknowledged in the FAQ that the term "branch office" encompasses not only a "servicing office" but a loan origination office as well. We agree.

When interpreting a federal administrative regulation, "a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). While the Constitution and federal statutes also must be considered, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." Id.; accord Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 171 (2007) ("[A]n agency's interpretation of its own regulations is controlling unless plainly erroneous or

18

inconsistent with the regulations being interpreted." (internal quotation marks omitted)); Auer v. Robbins, 519 U.S. 452, 461 (1997) (The Secretary's interpretation of his own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." (internal quotation marks omitted)).

However, "[i]f the regulation is unambiguous, then what is known as Seminole Rock deference does not apply, and the regulation's plain language, not the agency's interpretation, controls." United States v. Deaton, 332 F.3d 698, 709 (4th Cir. 2003); accord Christensen v. Harris County, 529 U.S. 576, 588 (2000) ("Auer deference is warranted only when the language of the regulation is ambiguous."). To defer to an agency's interpretation when the regulation itself is unambiguous "would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." Christensen, 529 U.S. at 588.

The term "branch office" in the Regulation is unambiguous. "Branch" is defined as, among other things, "a part of a complex body: as . . . a section, department, or division of an organization," or "a subordinate or dependent part of a central system or organization," e.g., "a neighborhood branch of a city library" or "a branch bank in a suburb." Webster's Third New International Dictionary 267 (1993) (emphasis added). "Office" is defined as, among other things, "a place where a particular

19

kind of business is transacted or a service is supplied." Id.
at 1567. Because the Regulation applies if the mortgaged
property is within 200 miles "of the mortgagee, its servicer,
or a branch office of either," the particular type of business
or service supplied by an office within the contemplation of
the Regulation is not limited to servicing. Rather, every type
of business and service supplied by the mortgagee, including
loan origination, is within its scope.[5]

This conclusion is underscored by the language of the FAQ
itself, which states that "[t]he Department is aware that many
Mortgagees maintain 'branch offices' that deal only with loan
origination." HUD therefore acknowledges that offices that
deal only with loan origination are "branch offices" within the
meaning of the Regulation but purports to limit the unambiguous
regulatory term to include only "servicing offices." The
Regulation itself does not support this limitation. To accept
HUD's interpretation would amount to allowing it to create a

---

[5] HUD considered limiting the scope of "branch office" only
to "servicing offices" in the course of substantive rulemaking
by amending 24 C.F.R. § 203.604(c)(2) to remove references to
mortgagees. Revisions to the Single Family Mortgage Insurance
Program; Proposed Rule, 69 Fed. Reg. 65,325 (Nov. 10, 2004) (to
be codified at 24 C.F.R. pt. 203). Under the proposed
amendment, the face-to-face meeting would not apply if "[t]he
mortgaged property is not within 200 miles of the servicer, or
a branch office of the servicer." Id. at 65,327. However, the
amendment was not included in the final rule. Revisions to the
Single Family Mortgage Insurance Program; Final Rule, 72 Fed.
Reg. 56,156, 56,157 (Oct. 2, 2007) (to be codified at 24 C.F.R.
pt. 203) ("[T]his final rule does not effectuate the revisions
to § 203.604(c)(2) that were contained in the proposed rule.").

20

new regulation or tacitly amend 24 C.F.R. § 203.604(c)(2) without following the proper statutory procedure. We are not permitted to do so. <u>Christensen</u>, 529 U.S. at 588.

Alternatively, even if we were to conclude that "branch office" is ambiguous, HUD's interpretation as supplied in the FAQ would not control because it was not promulgated under the procedures for substantive rulemaking required by the Administrative Procedure Act, 5 U.S.C. §§ 551-559. It therefore does not have the force of law. <u>Shalala v. Guernsey Mem'l Hosp.</u>, 514 U.S. 87, 99 (1995); <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 301-02 & 302 n.31 (1979). Rather, it is at most "an interpretive rule issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." <u>Shalala</u>, 514 U.S. at 99 (internal quotation marks omitted); <u>Chrysler Corp.</u>, 441 U.S. at 302 n.31 (internal quotation marks omitted); <u>see also</u> <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995) (distinguishing between the deference accorded substantive rules adopted pursuant to the Administrative Procedure Act and that accorded mere interpretive rules).

We acknowledge that mere interpretive rules are entitled to some measure of judicial deference. <u>Reno</u>, 515 U.S. at 61; <u>Martin v. Occupational Health and Safety Review Commission</u>, 499 U.S. 144, 157 (1991); <u>see also</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 234 (2001) ("[A]n agency's interpretation may merit

21

some deference whatever its form, given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." (internal citations and quotation marks omitted)).  However, "[s]ome indicia of reliability and reasonableness must exist in order for us to defer to the agency's interpretation."  Shipbuilders Council of Am., Inc. v. United States Coast Guard, 578 F.3d 234, 245 (4th Cir. 2009).

According to the FAQ, the purpose of interpreting "branch office" to mean only "servicing office" is to ensure that the face-to-face meeting takes place between the borrower and "staff that is adequately trained to discuss the delinquency and the appropriate loss mitigation options."  Because "individuals that staff an origination office are not familiar with servicing issues and are not trained in debt collection or HUD's Loss Mitigation Program," the FAQ's interpretation excludes such offices from the term "branch office."  But we do not consider this exclusion to be reasonable.  If an originating office within the 200-mile radius lacks staff with the appropriate training, appropriately-trained staff could participate in a face-to-face meeting between the borrower and the staff of the originating office by tele- or video-conference, for example, thereby imposing a minimal burden on

the lender while furthering the loss mitigation purpose of the Regulation and its underlying statutory authority.[6]  Because the stated rationale for the interpretation is not reasonable, we would not defer to it even if the term "branch office" were ambiguous.

Accordingly, we reject PHH's argument that the Regulation does not apply because it does not have a "servicing office" within the 200-mile radius set forth in 24 C.F.R. § 203.604(c)(2).  Because the Mathewses alleged in their complaint that PHH has branch offices within the 200-mile radius, they have pled sufficient facts for the Regulation to apply.

### III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

CHIEF JUSTICE KINSER, concurring.

---

[6] The Regulation is authorized by 12 U.S.C § 1715b, which enables HUD to promulgate regulations necessary to carry out the insured loan program, and 12 U.S.C. § 1715u(a), which requires lenders to "engage in loss mitigation actions."  In May 2009, Congress amended 12 U.S.C. § 1715u(a) to expressly include "support for borrower housing counseling" within such actions.  The Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 203(d)(1)(C), 123 Stat. 1631, 1645.

I agree with the majority's conclusion that 24 C.F.R. §§ 203.500 and 203.606(a) express the intent of the Secretary of Housing and Urban Development ("HUD") that a mortgagee cannot commence foreclosure proceedings until it has complied with the requirements of certain regulations and that 24 C.F.R. § 203.604 is incorporated as a condition precedent in the deed of trust executed by Richard M. Mathews and Karin L. Mathews ("the Mathewses").  I write separately, however, to clarify the actual requirements set forth in 24 C.F.R. § 203.604 because the Mathewses distort the 30-day face-to-face meeting requirement at issue in this appeal.

Subpart C ("Servicing Responsibilities"), of Part 203 ("Single Family Mortgage Insurance"), in Title 24 ("Housing and Urban Development"), of the Code of Federal Regulations provides, in relevant part:

> This subpart identifies servicing practices of lending institutions that HUD considers acceptable for mortgages insured by HUD. . . . It is the intent of [HUD] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed.

24 C.F.R. § 203.500.  Continuing, 24 C.F.R. § 203.606(a) states:

> Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met.  The

24

mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. In addition, prior to initiating any action required by law to foreclose the mortgage, the mortgagee shall notify the mortgagor in a format prescribed by the Secretary that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default.

The 30-day face-to-face meeting requirement at issue in this appeal is found in 24 C.F.R. § 203.604(b). In relevant part, the subsection requires that

[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . .

Pursuant to this subsection, the mortgagee is required to conduct a face-to-face interview with the mortgagor before three full monthly installments are unpaid. A face-to-face meeting at least 30 days before commencement of foreclosure proceedings is required "[i]f default occurs in a repayment plan arranged other than during a personal interview." Id. (emphasis added). Thus, the face-to-face interview requirements are triggered by two separate events. The one at

25

issue in this appeal, a face-to-face meeting at least 30 days before foreclosure is commenced, as I have already pointed out, becomes necessary "[i]f default occurs in a repayment plan arranged other than during a personal interview." Id.

However, in their complaint, the Mathewses quoted only part of the language in 24 C.F.R. § 203.604(b) and thereby distorted what is actually required. In one paragraph, the Mathewses alleged that

> the holder of the note can foreclose on the home in the event of arrearage on payment of the note, but only if the holder of the note has complied with . . . regulations, including inter alia, 24 C.F.R. § 203.604, whereby 'The mortgagee must have a face-to-face interview with the mortgagor . . . or make a reasonable attempt to arrange such a meeting within 30 days after such default or at least 30 days before foreclosure is commenced . . . .'[*]

24 C.F.R. § 203.604(b). The Mathewses then alleged that "no creditor entity ever had a face[-]to[-]face meeting with [them] or made any attempt to arrange for any such face-to-face meeting." Later in the complaint, the Mathewses asserted that "[a]t no time has [the mortgagee] complied with 24 C.F.R. [§] 203.604, a federal regulation whereby 'The mortgagee must have a fac[e]-to-face interview with the mortgagor [ ] or make

---

[*]The majority also states that 24 C.F.R. § 203.604 "requires the lender to 'have a face-to-face interview' with the borrower, 'or make a reasonable effort to arrange such a meeting' " without reciting the events that trigger such requirements.

26

a reasonable attempt to arrange such a meeting within 30 days after such default or at least 30 days before foreclosure is commenced . . . .' "

Notably, the Mathewses did not allege that the mortgagee failed to have a face-to-face interview with them before three full monthly installments were unpaid.  Likewise, the Mathewses did not allege that the mortgagee failed to have a face-to-face meeting with them within 30 days after default and at least 30 days before foreclosure was commenced upon their default on "a repayment plan arranged other than during a personal interview."  24 C.F.R. § 203.604(b).  Although the Mathewses admitted in their complaint that they "fell into arrears on the note," they did not allege that they ever defaulted on "a repayment plan arranged other than during a personal interview."  24 C.F.R. § 203.604(b).  Instead, by omitting relevant portions of 24 C.F.R. § 203.604(b), the Mathewses were able to allege that the mortgagee failed to conduct a face-to-face meeting with them 30 days before commencing foreclosure, a requirement not set forth in the plain terms of that subsection.  Thus, in my view, the Mathewses failed to state a cause of action upon which relief could be granted.  See Kaltman v. All American Pest Control, 281 Va. 483, 489, 706 S.E.2d 864, 867 (2011) (demurrer tests the legal sufficiency of facts alleged in a pleading); Glazebrook v. Board of

27

<u>Supervisors</u>, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003) (same).

In this case, however, when PHH Mortgage Corporation filed its demurrer to the Mathewses' complaint seeking declaratory judgment, it did not assert as a basis for its demurrer the issue I have identified.  In ruling on a demurrer, a trial court cannot consider any "grounds other than those stated specifically in the demurrer."  Code § 8.01-273(A); <u>see</u> <u>also</u> <u>TC MidAtlantic Dev., Inc. v. Commonwealth</u>, 280 Va. 204, 214, 695 S.E.2d 543, 549 (2010); <u>Chippenham Manor, Inc. v. Dervishian</u>, 214 Va. 448, 451, 201 S.E.2d 794, 796 (1974).  Nor can this Court on appeal.

For these reasons, I respectfully concur and, like the majority, would affirm in part and reverse in part the circuit court's judgment and remand for further proceedings.

JUSTICE McCLANAHAN, concurring.

I agree with the majority's holdings in this case. However, in my opinion, the first material breach doctrine, as applied in <u>Horton v. Horton</u>, 254 Va. 111, 115-16, 487 S.E.2d 200, 203-04 (1997), and <u>Countryside Orthopaedics, P.C. v. Peyton</u>, 261 Va. 142, 154, 541 S.E.2d 279, 285 (2001), is

28

inapplicable here for reasons not specifically addressed by the majority.

The Mathewses' failure to pay under the terms of the note and deed of trust at issue – of which defendant PHH became the holder and beneficiary, respectively, as the successor in interest – was clearly a material breach of both the note <u>and</u> the deed of trust.[1]  Following this default, PHH sought to foreclose on the Mathewses' residence pursuant to PHH's <u>remedies</u> set forth in paragraph eighteen of the non-uniform covenants of the deed of trust.[2]

The Mathewses, in turn, sought by the instant declaratory judgment action to stop PHH from going forward with its remedy of foreclosure based on their claim that PHH failed to first comply with a condition precedent to its right to enforce this

---

[1]As stated in paragraph one of the uniform covenants of the deed of trust: "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note."  Then in paragraph nine of these covenants, the deed of trust states, in relevant part: "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if . . . Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment . . . ."

[2] The deed of trust there provides in relevant part, under the heading "Foreclosure Procedure": "If Lender requires immediate payment in full under paragraph 9, <u>Lender may invoke the power of sale and any other remedies permitted by applicable law</u>.  Lender shall be entitled to collect all expenses incurred <u>in pursuing the remedies provided in this paragraph 18</u> . . . ."  (Emphasis added.)

29

remedy – i.e., the "face-to-face interview" requirement under 24 C.F.R. § 203.604 as incorporated into the deed of trust. Citing Horton and Countryside, PHH asserted below in support of its demurrer to this action, as it does on appeal, that the Mathewses were precluded from making this claim by virtue of the first material breach doctrine. That is, under this doctrine, because the Mathewses first materially breached the deed of trust by their payment defaults, they could not require PHH to comply with the terms of the deed of trust. As the doctrine has been applied under Virginia law, however, it is inapplicable here. The doctrine has functioned as an affirmative defense to the first breaching party's action against a defendant who purportedly failed to perform a contractual obligation unrelated to the defendant's own remedies against the plaintiff for the plaintiff's breach of the parties' contract. See SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co., 806 F.Supp.2d 872, 887 (E.D. Va. 2011) ("[T]he first material breach doctrine operates not as remedy requested by a party in its capacity as a plaintiff, but as an affirmative defense pled by a party in its capacity as a defendant."); cf. Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114, 121-22, 654 S.E.2d 898, 901 (2008) (holding that borrower was entitled to damages based on lender's violation of the terms of its remedies under its deed of trust).

In this case, the original lender, PHH's predecessor in interest, performed its primary obligation at the inception of the subject transaction between it and the Mathewses when it made the loan to them under the terms of the note and deed of trust.  And the Mathewses' instant action, of course, has nothing to do with them seeking damages or specific performance in regard to any non-performance of that contractual obligation.  Rather, this action was instituted in the context of their defense to PHH's enforcement of its remedy of foreclosure against them.

Unlike the Mathewses, the breaching party in both Horton and Countryside sought damages based on the defendant's failure to perform one of the defendant's contractual obligations that was unrelated to any remedy of the defendant for the plaintiff's breach of the parties' contract.[3]

---

[3] In Horton, a former wife sought damages from her former husband due to his failure to make supplemental payments to an escrow account established for her benefit pursuant to the terms of a joint venture dissolution agreement entered into by the parties.  254 Va. at 112-14, 487 S.E.2d at 202-03.  We held that because the former wife first committed a material breach of the agreement, which "defeated an essential purpose of the contract," the former husband's nonperformance was excused.  Id. at 116, 487 S.E. 2d at 204.  Similarly, in Countryside, we held that, based on the first material breach doctrine, the plaintiff employee/stockholder was not entitled to contract damages in the form of severance pay, as provided for in his employment agreement with the defendant professional corporation.  261 Va. at 154-56, 541 S.E.2d at 285-87.  We reached that conclusion because the plaintiff, before resigning from the corporation, first materially

31

For these reasons, I agree with the majority that the circuit court erred in holding that, because the Mathewses first materially breached the deed of trust, they were not entitled to enforce the terms of the deed of trust against PHH in regard to its remedy of foreclosure.

---

breached his related stock purchase agreement in which he acquired an ownership interest in the corporation.  Id.